IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JIM DAVID WAGONER,

    Plaintiff,

v.

LEWIS GALE MEDICAL CENTER, LLC,

Serve:
CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA 23060-0000

and

HCA HEALTH SERVICES OF VIRGINIA, INC.,

Serve:
CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA 23060-0000

    Defendants.

Case No: 7:15CV00570

## COMPLAINT

The above-named Plaintiff, Jim David Wagoner ("Mr. Wagoner"), by counsel, states as his Complaint against Defendants Lewis Gale Medical Center, LLC, and HCA Health Services of Virginia, Inc. ("Defendants"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal question presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

1

2. A substantial part of the acts and/or omissions of Defendants from which the causes of action arise, occurred within the Western District of Virginia. Due to their contacts within the Commonwealth of Virginia, Defendants avail themselves to the jurisdiction of this Court.

3. Venue is appropriate as a substantial part of the acts and/or omissions of Defendants from which the causes of action arise occurred in Salem, Virginia and other areas within the Western District of Virginia. *See* 28 U.S.C. §1391(b)(2).

4. Mr. Wagoner timely filed his charge with the Equal Employment Opportunity Commission. Mr. Wagoner received a Notice of Right to Sue dated July 28, 2015. Mr. Wagoner files this action within ninety (90) days of receipt of that notice.

## II. THE PARTIES

5. Plaintiff Mr. Wagoner is a resident of Huddleston, Virginia.

6. At all times relevant to the Complaint, Mr. Wagoner suffered from a known disability, specifically Dyslexia.

7. Defendant Lewis Gale Medical Center, LLC (hereinafter "LGMC"), is a general medical and surgical hospital located in Salem, Virginia. LGMC maintains its principal place of business in Virginia, is incorporated in Delaware, and maintains business locations and registered agents within Virginia.

8. Defendant HCA Health Services of Virginia, Inc. (hereinafter "HCA"), is a healthcare network of several hospitals in Virginia, and the parent company of Defendant LGMC. HCA maintains its principal place of business in Virginia, is incorporated in Virginia, and maintains business locations and registered agents

2

in Virginia.

### III. FACTUAL BACKGROUND

9. Mr. Wagoner was hired by LGMC as a Security Officer at the hospital located at 1900 Electric Road, Salem, Virginia 24153, on or about April 4, 2014. Mr. Wagoner began his work duties on or about April 14, 2014.

10. Each Defendant is an "employer" of Mr. Wagoner, as that term is defined under the ADA.

11. Mr. Wagoner worked approximately 16 hours per week, and earned $12.49 an hour in this position, in addition to other benefits.

12. Mr. Wagoner's job duties included scheduled patrolling, handling security issues, and working various schedules, including on demand scheduling.

13. Mr. Wagoner performed his assigned job duties diligently throughout the duration of his employment.

14. As previously noted, Mr. Wagoner suffers from severe Dyslexia, which is a developmental reading disorder that occurs when the brain does not properly recognize and process certain symbols.

15. Mr. Wagoner reported to Lead Security Officer, Frankie Ceballos, and the LGMC Director of Engineering and Security, Bobby Baker.

16. During Mr. Wagoner's second week of employment, he reported to Mr. Baker that he [Mr. Wagoner] suffered from Dyslexia.

17. At this time, Mr. Wagoner also informed Mr. Baker that he was having great difficulty reading, comprehending, and copying the posted work schedule for

Security Officers located in the LGMC security office.

18. The work schedule was posted on a large board. Security Officers were responsible for viewing this board and writing down their scheduled work times. The seated area designated for copying the schedule was approximately eight feet away from the board and schedule.

19. Upon information and belief, the schedule was complex and confusing. Indeed, Mr. Wagoner's Dyslexia caused him to have significant difficulty reading and comprehending the schedule. The long distance of the above-referenced seating area from the posted schedule also contributed to Mr. Wagoner's difficulty.

20. Mr. Wagoner was concerned that he would make an error when copying down the schedule.

21. Because Mr. Wagoner had great difficult reading, comprehending, and copying the posted work schedule, he spoke with supervisory employee Mr. Baker and requested the reasonable accommodation of receiving a physical, written copy of the posted schedule.

22. Upon information and belief, it would have been simple for Mr. Baker to provide Mr. Wagoner with a physical, written copy of the posted schedule.

23. Inexplicably, Mr. Wagoner was denied this reasonable request.

24. Additionally, Mr. Wagoner had difficulty receiving clear information about his schedule. Indeed, LGMC changed Mr. Wagoner's work schedule while he was off shift, and did not notify him of the changes, causing him to miss a training session on or around April of 2014.

4

25. On or about May 29, 2014, Mr. Wagoner was unfairly placed on a Performance Improvement Plan by Mr. Baker for missing the above-referenced training session.
26. During this disciplinary meeting between Mr. Baker and Mr. Wagoner, Mr. Wagoner again advised Mr. Baker of his Dyslexia and again requested the reasonable accommodation of receiving a physical, written copy of the posted schedule.
27. Mr. Wagoner was again denied this reasonable request.
28. On or about June 5, 2014, Mr. Wagoner missed an evening shift because he made an error when copying down his weekly schedule. This error was due to his Dyslexia, and consequent struggle to read and comprehend the LGMC work schedule board without accommodation.
29. Mr. Wagoner subsequently approached LGMC Security Training Officer Kirk [Last Name Unknown], advised him that [Mr. Wagoner] suffered from Dyslexia.
30. Mr. Wagoner was unlawfully terminated from employment by Mr. Baker shortly thereafter, on or about June 12, 2014.
31. Mr. Baker presented Mr. Wagoner with a physical, written copy of the schedule, dated June 3, 2014, during the above-referenced June 12, 2014 termination meeting.
32. The reasons for Mr. Wagoner's termination were pretextual.
33. Mr. Wagoner was terminated because LGMC and HCA failed to properly accommodate his disability and/or discriminated against him because of his

5

Case 7:15-cv-00570-EKD-RSB   Document 1   Filed 10/23/15   Page 5 of 11   Pageid#: 5

disability and/or retaliated against him because of his request for an accommodation, all in violation of the ADA.

### COUNT I: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADA

34. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

35. At all times relevant to the Complaint, Mr. Wagoner was a qualified individual with a disability under the ADA. Specifically, Mr. Wagoner suffered from Dyslexia.

36. At all times relevant to the Complaint, Mr. Wagoner could perform the essential functions of his job as a Security Officer with or without an accommodation.

37. Prior to Mr. Wagoner's unlawful termination, he was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

38. Prior to his termination, Mr. Wagoner revealed his disability and asked for a reasonable accommodation related to receiving a physical, written copy of his work schedule. Mr. Wagoner was terminated from employment for revealing his disability.

39. Defendants would not have terminated Mr. Wagoner or taken the other discriminatory actions against him but for Mr. Wagoner's disability and/or his request for a reasonable accommodation. Indeed, Mr. Wagoner's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Mr. Wagoner's disability or request for a

6

reasonable accommodation.

40. The reasons given for Mr. Wagoner's termination from employment were pretextual.

41. As a direct and proximate result of Defendant's actions, Mr. Wagoner has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

42. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Wagoner so as to support an award of punitive damages.

43. The above-described acts by Defendants and employees of Defendants constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008.

### COUNT II: CLAIM FOR RETALIATION IN VIOLATION OF THE ADA

44. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

45. At all times relevant to the Complaint, Mr. Wagoner was a qualified individual with a disability under the ADA. Specifically, Mr. Wagoner suffered from Dyslexia.

46. At all times relevant to the Complaint, Mr. Wagoner could perform the essential functions of his job as a Security Officer with or without an accommodation.

7

47. Prior to Mr. Wagoner's unlawful termination, he was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

48. Prior to his termination, Mr. Wagoner revealed his disability and asked for a reasonable accommodation related to receiving a physical, written copy of his work schedule. Mr. Wagoner was retaliated against for revealing his disability and requesting this reasonable accommodation.

49. Defendants would not have terminated Mr. Wagoner or taken the other discriminatory/retaliatory actions against Mr. Wagoner but for Mr. Wagoner's disability and/or his request for a reasonable accommodation. Indeed, Mr. Wagoner's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon Mr. Wagoner's disability or request for a reasonable accommodation.

50. The reasons given for Mr. Wagoner's termination from employment were pretextual.

51. As a direct and proximate result of Defendants' actions, Mr. Wagoner has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

52. At all times material hereto, Defendants engaged in unlawful and retaliatory practices with malice or reckless indifference to the federally protected rights of Mr. Wagoner so as to support an award of punitive damages.

53. The above-described acts by Defendants and employees of Defendants constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008.

### COUNT III: CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

54. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

55. At all times relevant to the Complaint, Mr. Wagoner was a qualified individual with a disability under the ADA. Specifically, Mr. Wagoner suffered from Dyslexia.

56. At all times relevant to the Complaint, Mr. Wagoner could perform the essential functions of his job as a Security Officer with or without an accommodation.

57. Prior to Mr. Wagoner's leaves of absence and at the time of his termination, Mr. Wagoner was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

58. Prior to his termination, Mr. Wagoner revealed his disability and asked for a reasonable accommodation related to receiving a physical, written copy of his work schedule.

59. Defendants failed to properly accommodate Mr. Wagoner in that he was unlawfully terminated in June of 2014.

60. Alternatively, should Defendants contend that Mr. Wagoner was not performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations, Defendants should have accommodated Mr. Wagoner by

9

providing him with a physical, written copy of his work schedule as per his numerous requests.

61. Defendants would not have terminated Mr. Wagoner or taken the other discriminatory/retaliatory actions against Mr. Wagoner but for Mr. Wagoner's disability and/or his request and/or need for a reasonable accommodation. Indeed, Mr. Wagoner's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon Mr. Wagoner's disability or request or need for a reasonable accommodation.

62. The reasons given for Mr. Wagoner's termination from employment were pretextual.

63. As a direct and proximate result of Defendants' actions, Mr. Wagoner has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

64. At all times material hereto, Defendants engaged in unlawful and discriminatory and retaliatory practices with malice or reckless indifference to the federally protected rights of Mr. Wagoner so as to support an award of punitive damages.

65. The above-described acts by Defendants and employees of Defendants constitute a failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008.

10

WHEREFORE, Plaintiff Jim David Wagoner prays for judgment against Defendants Lewis Gale Medical Center, LLC, and HCA Health Services of Virginia, Inc., and for equitable relief, compensatory, punitive damages, together with prejudgment interest from the date of termination of Mr. Wagoner's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

_____
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiff*