| | |
|---|---|
| JIM DAVID WAGONER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-00570 |
| ) | |
| LEWIS GALE MEDICAL CENTER, LLC, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION**

Defendant, Lewis Gale Medical Center, LLC (Lewis Gale) has moved for summary judgment in this case where plaintiff, Jim David Wagoner (Wagoner), alleges that he was terminated from his employment as a security officer with Lewis Gale because of his dyslexia, that Lewis Gale failed to accommodate him, and that Lewis Gale retaliated against him by terminating him when he sought an accommodation—all in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. The parties briefed the motion, the court heard oral argument on November 18, 2016, and the matter is now ripe for disposition. Because there are genuine issues of material fact, the court will deny defendant's motion for summary judgment.

I. FACTUAL BACKGROUND

In April 2014, Lewis Gale hired Wagoner, and he began working as a security officer at Lewis Gale's hospital on an as-needed basis. Wagoner contends, and defendant does not dispute for purposes of its motion, that during his second week of employment, Wagoner told Bobby Baker, Director of Safety Security and Emergency Management and one of Wagoner's supervisors, that he suffered from dyslexia and that he was having trouble reading, understanding, and copying the work schedule that was posted in the security office. (Wagoner Dep. 87:9–87:20, Dkt. No. 56-1.) He

1

asked Mr. Baker for a copy of the rather complicated work schedule five times, but his requests were denied. (Wagoner Dep. 84:18–85:12, 88:2–88:10, 126:22–127:6; Pl.'s Br. Opp'n to Mot. Summ. J. (Pl. Br.) Dkt. No. 58, at Ex. D, Dkt. No. 58-4.) He was told he could not have a copy and would have to write it down instead. (Wagoner Dep. 84:22–85:4)[1]

Throughout his employment, Wagoner had difficulties performing his job, as documented by Lewis Gale. (*See* verbal counseling on April 9, 2014 (Def.'s Mem. Supp. Mot. Summ. J. (Def. Br.) Dkt. No. 56, at Ex. 9, Dkt. No. 56-9), three emails in April (Def. Br. Ex. 11), and six emails in May 2014 pre-dating the performance improvement plan (PIP) (Def. Br. Ex. 14).) As a result, he was placed on a PIP on May 29, 2014. (Def. Br. Ex. 13.) The PIP documented deficiencies in seven areas, only one of which concerned missing work due to not reviewing updated schedules. (*Id.*) Deficiencies were noted in basic competencies such as I-Trak (a documentation system) and patient valuables; morgue operations; respect for cultural diversity; emergency code response; adherence to updated staffing scheduling; fast track visitor management system use; and policy adherence. (*Id.*) The PIP noted that "[s]ignificant progress and competency should be exhibited by the officer within 30 days of notice to include but not be limited to the listed examples of competency of the position. Failure to comply or show marked improvement may result in further disciplinary action, up to and including termination." (*Id.*)

Lewis Gale then immediately began retraining Wagoner. Baker sent an email to the lead officer team regarding the PIP and noted that the officers should "do your best to work with Jim whenever on shift to ensure he has the opportunity to learn and improve upon the basic competencies of the position." (Baker Decl. 3, Def. Br. Ex. 16.) Baker also asked for daily progress reports. (*Id.*) Officer Kirk Hendricks, who Wagoner told of his dyslexia, documented the

---

[1] Baker has no recall of ever being asked for a copy of the schedule and has no recall of Wagoner, even after seeing him during depositions. (Baker Dep. 14:21–17:6, Dkt. No. 58-15.) Officer Kirk Hendricks testified that he told Baker that Wagoner was dyslexic. (Hendricks Dep. 9:24–10:3, Dkt. No. 58-13.)

2

retraining.  (Def. Br. Ex. 8, at 13–24; Hendricks Dep. 8:21–9:12, Dkt. No. 58-13.)  On May 29, he worked with Wagoner on logging into systems, and securing and returning valuables.  He was not able to complete all retraining and planned to continue it the following week.  (Def. Br. Ex. 8, at 20; Def. Br. Ex. 17.)  He did note that progress was made on logging into the computer system.  (Def. Br. Ex. 17.)  On May 30, Hendricks indicated that he had no opportunity to train with Wagoner, but that Wagoner had "understanding of the use of the computer, iTrak, email," and he also noted that Wagoner needed to "continue to demonstrate his ability to be consistent."  (Def. Br. Ex. 8, at 14; Pl. Br. Ex. J.)  Another note on May 30 indicated that Hendricks assisted Wagoner with log on/email.  (Def. Br. Ex. 21.)  On June 1, Hendricks noted that Wagoner "needed assistance with iTrak, was able to quickly show the error in which he corrected."  (Def. Br. Ex. 8, at 22.)  On the same day, Hendricks sent an email to other officers and asked them to email Wagoner's progress, positive or negative, to place in a "book to be completed within his 30 days."  (Def. Br. Ex. 17.)  He also noted that he had not been able to work with Wagoner on his last two tours.  (*Id.*)  No comments by others were provided to the court for the retraining period.

On June 5, Wagoner failed to show up for work.  (Def. Br. Ex. 8, at 23–24.)  He attributes this failure to his inability to read and understand the schedule and Lewis Gale's failure to give him a written copy of the same.  On June 6, Hendricks notified Baker by email of Wagoner's absence from work.  (Def. Br. Ex. 19.)  He noted that Wagoner, when contacted, indicated that he was unaware that he had to work and that he must have read the schedule wrong.  Hendricks indicated that he had gone over Wagoner's responsibility to know his schedule as part of his retraining.  (*Id.*)  Hendricks also verified that he "**was unable to make him a copy of the schedule** but advised him,

3

several occasions to check the schedule."[2] (*Id.* (emphasis added).) Baker then sent an email on June 6 to Hubert Lee, apparently a Lewis Gale or parent company employee, telling him of the absence, noting that it came seven days after the PIP began, and asking if he now had enough grounds to proceed with termination. (Pl. Br. Ex. I.) On June 12, 2014, Wagoner was terminated. The Notice of Disciplinary Record had an incident date of June 5, 2014, and the notice stated, "Despite previous disciplinary notices and counseling sessions, Officer Wagoner's performance of his primary job duties as a Security Officer continues in an unacceptable fashion. Specifically, he failed to report for scheduled shifts on 5/21/2014 and again on 6/5/2014 subsequent to the issuance of his Performance Improvement Plan which specifically addressed staffing scheduling (see excerpt below), causing staffing difficulties and resulting in unwarranted exposure for our campus." (Def. Br. Ex. 18.) Wagoner commented on the form that he has dyslexia and he "wanted was to be able to fisicly [sic] be able to copy the scedual [sic]." (*Id.*) Wagoner testified that Baker only offered him a copy of the schedule, sarcastically, when he met with him and a representative from Human Resources after he missed work on June 5. (Wagoner Dep. 126:22–127:6.)

## II. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn

---

[2] Hendricks testified during his deposition, though, that he told Wagoner that Wagoner could grab a copy of the schedule from the Board and any staff member would assist him in making copies. (Hendricks Dep. 10:19–11:9.) At deposition, defendant's counsel suggested that Wagoner could have taken a photo of the schedule with his phone, but Wagoner stated that he had a cheap phone without a good camera. (Wagoner Dep. 85:13–86:12.)

4

therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)). Put differently, summary judgment should be entered if the court finds, after a review of the record as a whole, that no reasonable jury could return a verdict for the non-moving party. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996).

**B. Disability Discrimination**

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). A plaintiff may prove disability discrimination through direct evidence or indirectly through the burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir. 1995) (extending the *McDonnell Douglas* burden-shifting approach to ADA cases). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Ennis*, 53 F.3d at 58. If the plaintiff satisfies each element of the claim, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer produces such evidence, the burden returns to the plaintiff to demonstrate that the employer's asserted justification is a pretext for discrimination. *Id.*

To establish a prima facie case for disability discrimination involving wrongful termination, a plaintiff must demonstrate that: (1) he was a qualified individual with a disability; (2) he was fulfilling his employer's legitimate expectations; (3) he was discharged; and (4) the circumstances

5

of his discharge raise a reasonable inference of unlawful discrimination. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012); *Chamberlain v. Valley Health Sys., Inc.*, 781 F. Supp. 2d 305, 310 (W.D. Va. 2001). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8).

Lewis Gale agrees that Wagoner had dyslexia—a disability as defined in the ADA—and that Wagoner was discharged. It argues, though, that Wagoner was not a qualified person with a disability, that he was not fulfilling his employer's legitimate expectations, and that the circumstances of his termination do not raise a reasonable inference of unlawful discrimination. All of these arguments rely upon the fact that Wagoner was on a PIP at the time he was terminated and that only one area of deficiency in the PIP concerned Wagoner's disability and request for an accommodation; the remaining deficiencies were unrelated to his disability.

According to Lewis Gale, as documented by the PIP, Wagoner was not fulfilling its legitimate expectations and a written copy of the work schedule could only possibly address one deficient area—his failure to attend work due to not reviewing the updated schedule. Lewis Gale argues that a written copy of the work schedule could not enable Wagoner to meet its legitimate expectations in his other deficient areas, so he is not a "qualified person with a disability" because he could not perform his essential job functions with or without an accommodation. Lewis Gale asserts that, in addition to missing work on June 5, he did not improve his performance sufficiently while on the PIP, so it terminated his employment.

Lewis Gale contends, without any supporting case law, that any employee on a PIP cannot be deemed to be meeting his employer's legitimate expectations. While Wagoner's counsel acknowledged at the hearing that most of the deficiencies noted in the PIP were unrelated to

6

Wagoner's disability or requested accommodation and that Wagoner's case would have been weaker if he had been terminated instead of being placed on a PIP on May 29, 2014, the fact remains that Lewis Gale did not terminate Wagoner at that time. Instead, it found that additional training was appropriate. The many deficiencies set forth in the PIP provide powerful evidence that Wagoner was not meeting Lewis Gale's legitimate expectations. In a light most favorable to Wagoner, however, a reasonable jury could find that Lewis Gale's legitimate expectations were that Wagoner could sufficiently improve given retraining and that he was performing his job well enough to continue to be employed—and thus was qualified—at the time the PIP began. Further, the training documentation following implementation of the PIP indicates progress in the short time that Wagoner was on the PIP. The only deficiency noted while he was on the PIP was his failure to attend work as scheduled on June 5. While failure to attend work is often a legitimate reason for termination, it is that very deficiency that is directly related to Wagoner's dyslexia and his repeated and denied requests for a written copy of his schedule. Although Lewis Gale cites to cases allowing an employer to terminate an employee for conduct related to the employee's disability (*see* Def. Br. 12), it points to no cases granting judgment where the requested and denied accommodation could have directly prevented the conduct for which the employee was terminated.

Accordingly, the court concludes that there are genuine issues of material fact regarding whether Wagoner was a qualified individual, whether he was meeting Lewis Gale's legitimate expectations, and whether the circumstances of his termination raise a reasonable inference of discrimination. Viewing the facts in a light most favorable to Wagoner, a reasonable jury could find a prima facie case of disability discrimination in favor of Wagoner.

To be sure, Lewis Gale has more than met its "relatively modest burden" of production with regard to its asserted non-discriminatory reasons for terminating Wagoner. *Jacobs*, 780 F.3d at 575;

7

*see also Morris v. Sheetz, Inc.*, No. 5:13-cv-95, 2015 WL 1925457, at *8 (W.D. Va. Apr. 28, 2015) (finding employer had a legitimate reason for terminating employee after multiple documented performance issues and disciplinary actions). There are documented incidents unrelated to Wagoner's work schedule that, in part, led to the PIP. While Wagoner asserts that he was not trained sufficiently, it does not appear that he disputes his other deficiencies.

Upon the production of non-discriminatory reasons for the termination, the burden returns to Wagoner to establish a genuine question of whether Lewis Gale's non-discriminatory reasons are pretextual. *See Ennis*, 53 F.3d at 58. Viewing the facts in Wagoner's favor, a jury could find that Wagoner was improving under the PIP and that it was only his failure to attend work on June 5—the only deficiency related to his unaccommodated disability—that caused his termination. Thus, summary judgment will be denied as to Wagoner's claim for disability discrimination.

## C. Failure to Accommodate

Unlawful discrimination under the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). For purposes of the ADA, the term "reasonable accommodation" includes "job restructuring," "modified work schedules," and "other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

In order to establish a prima facie case against an employer for failure to accommodate under the ADA, a plaintiff must show: (1) that he is an individual with a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that, with reasonable accommodation, he could perform the essential functions of the position; and (4) that the employer refused to make such accommodation. *Wilson*, 717 F.3d at 345; *see also Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015); *Rhoads v. Fed. Deposit Ins. Corp.*, 257

F.3d 373, 387 n.11 (4th Cir. 2001).

Lewis Gale argues that a reasonable accommodation, to be actionable, "must be effective and enable the employee to perform the essential functions of the job." (Def. Br. 16 (citing 29 C.F.R. § 1630.2(o)(1)(ii)).) It contends, as noted in the previous section, that Wagoner could not perform the essential functions of his job because a written copy of his work schedule would not serve to cure the deficiencies unrelated to attendance that are noted in the PIP. Thus, it states, the requested accommodation could not be effective and was not reasonable. For the same reasons stated in the previous section, viewing the facts in a light most favorable to Wagoner, a reasonable jury could find in his favor on this claim. A jury could determine that he may not have missed work on June 5 if he had been given a written copy of his work schedule as he requested.[3]

**D. Retaliation**

In addition to prohibiting discrimination on the basis of disability, the ADA also prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) that he engaged in a protected activity, (2) that his employer acted adversely against him, and (3) that there was a causal connection between the protected activity and the employer's adverse action. *Rhoads*, 257 F.3d at 392. *See also S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016).

Lewis Gale contends that Wagoner fails to establish a prima facie case of retaliation because he never complained about disability discrimination, so he did not engage in protected activity. Wagoner argues that requesting an accommodation is itself protected activity, and Lewis Gale

---

[3] At the hearing there was discussion about whether an accommodation is reasonable if Wagoner himself could have easily taken care of his request himself. No case law was presented regarding this issue. But in a light most favorable to Wagoner, a reasonable jury could find that Wagoner's disability could prevent him from reliably hand-copying his schedule, and that Lewis Gale supervisors were, for some reason, not able to copy the schedule (Def. Br. Ex. 19), so Wagoner may not have been able to do so either.

9

disagrees, although neither party presented case law in support of its position. The prevailing view, in the Fourth Circuit and elsewhere, is that requesting an accommodation constitutes protected activity under the ADA. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) ("The record shows a termination and shows protected activity—Haulbrook's November 4 request for an accommodation."); *accord Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1188 & n.6 (10th Cir. 2016) (collecting cases); *Solomon v. Vilsack*, 763 F.3d 1, 15–16 & n.6 (D.C. Cir. 2014) (collecting cases); *see also Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907–08 (8th Cir. 2010) (noting that this theory is somewhat inconsistent with the plain language of the statute, but still finding that requesting an accommodation was protected activity); *Soileau v. Guilford of Me.*, 105 F.3d 12, 16 (1st Cir. 1997) (same). Accordingly, the court concludes that a request for accommodation can constitute protected activity. Lewis Gale's motion for summary judgment will be denied with regard to Wagoner's retaliation claim.

### III. CONCLUSION

For the stated reasons, the court finds genuine issues of material fact exist as to whether Wagoner was terminated because of discrimination and/or retaliation, in violation of the ADA, and whether Lewis Gale failed to provide Wagoner with a reasonable accommodation. Defendant's summary judgment motion (Dkt. No. 55) will be DENIED. The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

Entered: December 7, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge