IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JIM DAVID WAGONER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-00570 |
| ) | |
| LEWIS GALE MEDICAL CENTER, LLC, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION REGARDING MOTIONS IN LIMINE**

In this employment case, plaintiff Jim David Wagoner and defendant Lewis Gale Medical Center, LLC, each move in limine to exclude certain expert testimony and evidence from trial. The parties briefed their motions, the court heard oral argument on September 6, 2016, and November 18, 2016, and the motions are now ripe for disposition.

I. BACKGROUND

Wagoner alleges that he was terminated from his employment as a security officer with Lewis Gale because of his dyslexia, that Lewis Gale failed to accommodate him, and that Lewis Gale retaliated against him by terminating him when he sought an accommodation—all in violation of the Americans with Disabilities Act (ADA), 29 U.S.C. § 12101 *et seq.* Lewis Gale moves to exclude the expert testimony of Andrea Foutz, a psychologist with a bachelor's and master's degree in psychology and an education specialist degree in school psychology. (Def. Mot. Lim. Exclude Expert Report (Def.'s Mot. Lim.), Dkt. No. 32.) Her opinions support Wagoner's claim that he is disabled because she diagnosed Wagoner with a specific learning disability with impairment in reading (dyslexia) and deficits in processing speed and cognitive efficiency. (Foutz Report, Dkt. No. 22-2.) Following her receipt of Lewis Gale's expert report

1

by Dr. Gingras, Foutz submitted a letter/report dated July 7, 2016, and that document was provided to Lewis Gale. (Foutz Suppl., Dkt. No. 24-2.) Lewis Gale also moves to exclude that report as untimely (Def.'s Mot. Lim. Exclude Suppl. Expert Report (Def.'s Mot. Lim. Suppl.), Dkt. No. 23), but Wagoner's counsel indicates that he does not plan to use the report/letter as evidence. He did not solicit the report; Foutz generated it when she received the Gingras report.

Wagoner moves to exclude the testimony of Dr. Michel P. Gingras, a psychiatrist retained by Lewis Gale to examine Wagoner. (Pl.'s Mot. Lim. Exclude Expert Report (Pl.'s Mot. Lim.), Dkt. No. 22.) Dr. Gingras diagnosed Wagoner with delusional disorder with paranoid features, possible; personality disorder mixed type with paranoid and passive aggressive, narcissistic features; and malingering; but found dyslexia unsubstantiated. (Gingras Report 8, Dkt. No. 22-1.) He also opines that Wagoner is not credible and that "[t]he lure of compensation and blaming his problems on his 'dyslexia' is a fabrication that does not explain his attitude and behavior." (*Id.* at 9.) According to Lewis Gale, it is not challenging that Wagoner suffers from dyslexia and is disabled, but plans to use Gingras's testimony to support its position that Wagoner is not a qualified person with a disability because he cannot perform the essential functions of his job with or without an accommodation.[1] After the court expressed concern about whether the Gingras report addressed Wagoner's disability at the time of his employment, Lewis Gale submitted a supplement to the Gingras report on September 20, 2016. (Gingras Supplement, Dkt. No. 53-1.) Wagoner moves to exclude the supplemental report as untimely and for the same reasons stated in the motion to exclude Gingras's initial report. (Pl.'s Mot. Lim. Exclude Suppl. Expert Report (Pl.'s Mot. Lim. Suppl.), Dkt. No. 53.)

---

[1] The court finds it somewhat unusual that Lewis Gale would seek to argue that Wagoner could not perform the essential functions of his job because of different, then undiagnosed, conditions/disabilities. The court is unsure if Lewis Gale is arguing that it perceived Wagoner as having these other conditions.

2

II. DISCUSSION

**A. Lewis Gale's Motions**

1. *Andrea Foutz – Initial Report*

Lewis Gale argues that Foutz is not qualified to evaluate the 51-year-old Wagoner because she focuses on child and school psychology; that her testimony is unreliable because it was not based on sufficient facts or data and her testing is designed for children; and that her testimony is irrelevant because she ignored the facts of this case.[2] The court finds that Foutz is qualified, that her testimony is reliable and relevant, and that her opinions are based on sufficient facts. While Lewis Gale's arguments may go to the weight of Foutz's testimony, they do not affect the admissibility of her testimony.

Under Rule 702 of the Federal Rules of Evidence, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts and data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. This rule assigns to trial judges a "gatekeeping role" by limiting admission to expert testimony that is relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). "Rule 702 was intended to liberalize the introduction of relevant expert evidence," *Westberry v. Gislaved Gummy AB*, 178 F.3d 257, 261 (4th Cir. 1999), and courts should "exercise broad discretion in admitting scientific testimony that could later be tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

---

[2] Defendant's counsel indicated that defendant was not going to challenge plaintiff's assertion that he is dyslexic and that dyslexia is a disability. If that is indeed true, then this motion may be moot.

3

proof." *Md. Cas. Co. v. Therm-O-Disc*, 137 F.3d 780, 783 (4th Cir. 1998). Wagoner, as the proponent of the proposed testimony, has the burden of establishing its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n.10.

Foutz, a psychologist working in both educational settings and private practice, has assessed students and adults for learning disabilities, emotional disorders, and dyslexia since 1994. As Lewis Gale points out, her website appears to indicate that most of her work is with children and involves academic settings. (Def's Mot. Lim. Ex. 1.) But the website also indicates that she assesses persons in college. (*Id.* at 2.) College students are generally not minors and can be any age. Contrary to Lewis Gale's assertion, there is no indication that Foutz's education is limited to child psychology or school psychology. The fact that Foutz may focus on children and the school setting does not mean she is not qualified to opine as to an adult. Furthermore, academic skills such as reading, by common sense and experience, can also affect a person's abilities at work.

Foutz evaluated Wagoner over the course of two days, reviewed Wagoner's prior school testing and evaluations, and administered various tests. Not surprisingly, her evaluation included speaking with Wagoner about what he perceived to be his difficulties and asking about his history. (*See* Foutz Report.) While Lewis Gale takes issue with Foutz's reliance on statements by Wagoner, Lewis Gale fails to demonstrate that he misrepresented his history. Moreover, Foutz had the benefit of reviewing early evaluations of Wagoner to confirm the accuracy of his history. She also conducted extensive testing.[3] Lewis Gale is welcome to cross-examine her at trial with regard to whether the tests are the best tests for adults, but there is no indication that the extensive testing or its results are unreliable, so as to warrant exclusion.

---

[3] Lewis Gale complains about an ADHD test that was administered noting that Wagoner does not allege that he suffers from ADHD. (Def.'s Mot. Lim. 7.) Foutz, however, does not diagnose Wagoner with ADHD.

4

Finally, as made clear from her report, Foutz relied on the results of the testing to opine as to the probable difficulties Wagoner would have with certain tasks and to make a diagnosis. Lewis Gale complains that the testing was individually administered, but provides no support for its assumption that individually administered tests are not scientifically reliable.

Lewis Gale's motion to exclude Foutz's testimony based upon her initial report will be denied.

2. *Andrea Foutz – July 7, 2016 Report/Letter*

Lewis Gale filed a motion to exclude the report dated July 7, 2016, and received by Lewis Gale on July 8, 2016—days before the discovery cutoff date—and asks for sanctions. That report, adamantly called a letter by Wagoner, was filed late and specifically states that it is "[i]n response to the psychiatric evaluation conducted by Dr. Michel Gingras . . . ." (Foutz Suppl.) Pursuant to the court's scheduling order, initial expert disclosures and reports were due to Lewis Gale no later than March 28, 2016. (Scheduling Order 1, Dkt. No. 8.) Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure states that parties must submit expert testimony as ordered by the court and any evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . [must be disclosed] within 30 days after the other party's disclosure." Dr. Gingras's report was provided to Wagoner on April 26, 2016, so any rebuttal was due on or before May 26, 2016. Whether deemed a report or a letter, the document presents rebuttal opinions that were not timely disclosed.

In response to the motion, and as clarified at the hearing, Wagoner states that the letter was not solicited. Foutz sent the letter to Wagoner's counsel following her review of the Gingras report, and, pursuant to the duty to supplement discovery requests, counsel promptly forwarded the letter to Lewis Gale. The letter, in other words, was not meant to be a supplemental report or

5

a rebuttal report, according to counsel.  Nonetheless, Wagoner's counsel expressed surprise at the hearing at the possibility that Foutz would not be allowed to testify to the opinions she expressed in the letter.  Wagoner also notes that Lewis Gale did not depose Foutz, despite its opportunity to do so, and asserts that Lewis Gale should be thankful for the letter because Lewis Gale now knows Foutz's anticipated testimony without deposing her.

Whether Lewis Gale deposed Foutz is irrelevant to the court's analysis.  Rule 26 imposes affirmative obligations to disclose expert opinions.  Indeed, "the advisory committee intended that an expert's written report be so detailed and complete that it would dispense with the need to depose the expert."  *Samsung Elecs. Co. v. NVIDIA Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) (quoting *Zakit v. Global Linguist Solutions, LLC*, No. 1:14-cv-314, 2014 U.S. Dist. LEXIS 139344, at *7 (E.D. Va. Sept. 30, 2014)); *accord Campbell v. United States*, No. 3:10-cv-363, 2011 U.S. Dist. LEXIS 12305, at *8 (E.D. Va. Feb. 8, 2011).  The late disclosure violates Rule 26.

A party is not "permitted to use as evidence at a trial … any witness or information" not disclosed pursuant to Rule 26(a).  Fed. R. Civ. P. 37(c)(1).  The only exceptions to this rule of exclusion are when the failure to disclose is substantially justified or when the nondisclosure is harmless.  *Id.*; *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).  The party who failed to make the disclosure has the burden of showing harmlessness or justification.  *Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 478 (W.D. Va. 2010).  Wagoner, in his brief, offers no argument regarding substantial justification or harmlessness.  His conclusory argument at the hearing is insufficient to meet the burden, and Lewis Gale's motion to exclude the July 7, 2016 report and the opinions therein will be granted.

The court will not grant the motion for sanctions because the letter/report was not

6

solicited by Wagoner and was properly sent to Lewis Gale as a supplement to discovery requests. It was not intended to be a rebuttal report from Foutz.

**B. Wagoner's Motions**

    1. *Gingras – Initial Report*

Wagoner moves to exclude the initial and supplemental reports of Dr. Gingras. (Pl. Mot. Lim.; Pl.'s Mot. Lim. Suppl.) In his first motion, Wagoner argues that Gingras's report is unreliable because his examination of Wagoner was overly simplistic, particularly when compared to Foutz's report, and failed to employ industry standard evaluations that Foutz used. Lewis Gale counters that Gingras did a complete psychiatric evaluation and was not rebutting Foutz. It notes that differential diagnosis, the method he employed, is appropriate and that Gingras is more qualified than Foutz, so his failure to use the tests she used is not an appropriate basis to exclude Gingras. At the hearing, Lewis Gale further explained that Gingras was not testing for dyslexia and that Lewis Gale is not disputing that Wagoner is dyslexic. Rather, Gingras was analyzing Wagoner's ability to perform the essential functions of his job.

In analyzing the admissibility of the testimony, the court again looks to Rule 702 of the Federal Rules of Evidence. The fact that the Gingras report is less lengthy than Foutz's, and based on a shorter interview, is not a sound basis for its exclusion. To qualify as a proper expert opinion under *Daubert*, defendant need not prove that Gingras's testimony is irrefutable or certainly correct; it need only show that his testimony is reliable. Certainly Gingras is a qualified psychiatrist. Wagoner's challenges to the length and sophistication of his report go the weight of Gingras's opinions, not their admissibility. *See, e.g., Franco v. Boston Sci. Corp.*, No. 2:12-cv-2748, 2016 U.S. Dist. LEXIS 76469, at *57–58 (S.D. W. Va. June 13, 2016); *United States v. Johnson*, 122 F. Supp. 3d 272, 340–41 (M.D.N.C. 2015). Additionally, since Gingras's purpose

7

was not to challenge the dyslexia diagnosis, one would not expect him to use the same tests as Foutz.

Wagoner further argues that a number of Gingras's opinions are irrelevant and are based on Wagoner's state of mind, demeanor, and personal life, including opinions that Wagoner lacked credibility. Wagoner adds that the probative value of Gingras's testimony, even if relevant and reliable, should be excluded under Rule 403 because it is outweighed by its unfair prejudice and its potential for confusing or misleading the jury.

As noted, Dr. Gingras diagnosed Wagoner with delusional disorder with paranoid features, possible; personality disorder mixed type with paranoid and passive aggressive, narcissistic features; and malingering; and found Wagoner's claims of dyslexia (per his history) unsubstantiated. Just as Lewis Gale argued that Foutz's testing of Wagoner for ADHD was not relevant, the relevance of Gingras's diagnoses are in question. Lewis Gale contends that they are relevant to support its argument that Wagoner could not perform his job. To the extent Lewis Gale can show at trial that the diagnoses support that argument, then the above diagnoses (except for malingering, addressed below) may be relevant.

Gingras also opines that Wagoner is not credible and that "[t]he lure of compensation and blaming his problems on his 'dyslexia' is a fabrication that does not explain his attitude and behavior." (Gingras Report 9.) Gingras's report makes clear that Gingras did not believe much of what Wagoner told him and focuses extensively on Gingras's opinion regarding Wagoner's credibility. For example, he notes that:

- Wagoner's security company "seems to exist only on paper";
- he claimed he had a yacht and was involved in boat trading or boat flipping, but "could not be more specific about recent transactions";
- he claimed to have no knowledge about certain documentation provided by the employer "although he obviously knew about them";

8

- he says he was targeted by his supervisors, and it was some sort of "set up";
- "references to his 'boat dealership' and 'having be [sic] set up by his supervisor' appeared difficult to believe";
- he "was especially defensive when confronted with him having sent a 'bug' to Iran, quickly covering up by saying that 'it was a friend'";
- "[t]he discussion regarding his boat business was questionable";
- there were "serious doubts about [plaintiff's] credibility";
- plaintiff's statements about his security clearance allowing exchanges of information was "pure fantasy and fabrication";
- plaintiff's claim that he could not get help to copy his schedule was "another fallacy and lack of common sense";
- plaintiff's reporting that he was "set up" "is not necessarily based on reality" and reflected "an unrealistic perception of his surroundings."

Gringas also mentions a comment by Wagoner about the possibility of settling the case and wonders whether "monetary compensation was an important subject for him." (*Id.* at 7.)

Lewis Gale seemed to recognize at the hearing that Gingras would be limited in what he could say with regard to credibility. As the Fourth Circuit Court of Appeals has stated, "[t]he assessment of a witness's credibility, as we have explained, is 'usually within the jury's exclusive purview.'" *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (citation omitted). In an Eighth Circuit case alleging sexual harassment and constructive discharge, the court held that the trial court erred in allowing testimony of a psychiatrist with regard to plaintiff's veracity and credibility. The court explained:

> The challenged testimony impugning Nichols' psychiatric credibility and suggesting that recall bias, secondary gain, and malingering had influenced her story was not a proper subject of expert testimony under Fed. R. Evid. 702. The record does not show that these theories met the *Daubert* criteria, and in her testimony Dr. Pribor sought to answer the very question at the heart of the jury's task—could Nichols be believed? She testified that she needed "to interpret and weigh" what Nichols said or she could "get a very skewed and inaccurate view of what actually happened" and that Nichols was a malingerer motivated by financial gain. Opinions of this type create a serious danger of confusing or misleading the jury, *see* Fed. R. Evid. 403, causing it

9

> to substitute the expert's credibility assessment for its own common sense determination. *See United States v. Kime,* 99 F.3d 870, 884–85 (8th Cir.1996), *cert. denied,* 519 U.S. 1141, ——, 117 S. Ct. 1015, 136 L.Ed.2d 892 (1997). Dr. Pribor was permitted to comment on Nichols' reliability "in the guise of a medical opinion," *United States v. Whitted,* 11 F.3d 782, 785–86 (8th Cir. 1993), and this "impressively qualified expert's stamp" of untruthfulness on Nichols' story went beyond the scope of proper expert testimony. *United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986).

*Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998). *See also Kidd v. Wal-Mart Stores, Inc.*, 3:09-cv-264, 2009 U.S. Dist. LEXIS 105668, at *6–8 (E.D. Va. Nov. 12, 2009) (excluding testimony of a diagnosis of symptom magnification and somatoform disorder as invading the province of the jury to determine credibility). Because the jury can and should determine the credibility of witnesses, Gingras will not be permitted to testify about Wagoner's credibility, a desire to settle the case, or malingering. Furthermore, even if the testimony were relevant, the court would exclude it under Rule 403 as unfairly prejudicial and confusing.

The reliability and admissibility of Gingras's other opinions and diagnoses are more difficult to assess. The court understands that psychiatrists often rely on personal interaction with an individual in evaluating and diagnosing that person. In looking to the bases of the diagnoses made by Gingras, the report summarizes three tests that Gingras performed: a visual test, the Bender Gestalt test, and a spelling and reading test. These tests showed Wagoner's visual acuity and accuracy, ability to perceive and reproduce complex figures accurately, and ability to spell or copy four complex words. It does not appear from the report that these tests were designed to inform Gingras's comments regarding thought content or personality structure, or his diagnoses of delusional disorder with paranoid features, possible; personality disorder mixed type with paranoid and passive aggressive, narcissistic features; or malingering. Instead, it appears that Gingras must have relied heavily upon his personal interaction with Wagoner in

10

making these diagnoses.

With regard to Gingras's personal interaction with Wagoner, the report indicates that Gingras was heavily focused on Wagoner's credibility. The report does not state whether the credibility determinations were integral to the diagnoses. It does not state whether the credibility determinations were made based upon assumptions made by Gingras or were made based upon corroboration or verification that Wagoner was not credible. Also, the report does not state, and the court does not know, what a psychiatrist typically relies upon to make such determinations. Perhaps, at trial, this will be made clear. Thus, the court will take the admissibility of his other opinions under advisement at this time.[4]

2. *Gingras – Supplemental Report*

Because of concerns raised by the court at the hearing on September 6, 2016, regarding the fact that the Gingras's opinions were based only on an evaluation two years after Wagoner's employment, Lewis Gale submitted a supplemental report by Gingras, dated September 19, 2016, expressing that Wagoner's conditions were not ones that would change over time, but existed at the time of his employment. (Gingras Suppl.) Lewis Gale filed the supplemental report pursuant to Rule 26(e)(1) which requires a disclosing party to "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure is incomplete . . . and if the additional or corrective information has not otherwise been made known to the other parties . . . ." Rule 26(e)(1) disclosures are due no later than the deadline for pretrial disclosures under Rule 26(a)(3)—so thirty days before trial, if no other date is set by the court. Fed. R. Civ. P. 26(a)(3), 26(e)(2). In this case the witness and exhibit disclosures are due December 8, 2016.

---

[4] As noted *supra*, the court also is not sure of the relevance of these other opinions. But the court will be better able to evaluate that in the context of the evidence at trial.

11

Supplementation is appropriate to "add or correct information," but a party may not use Rule 26(e) supplementation "whenever [it] wants to bolster or submit additional expert opinions" or it would "amount to unlimited expert opinion preparation." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012). Put differently, the duty and ability to supplement "does not permit a party to make an end-run around the normal timetable for conducting discovery." *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006). Rule 26(e) authorizes only "true supplementation," like "correcting inadvertent errors or omissions;" not the addition of new information. *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013).

The Gingras supplement does clarify whether Wagoner's supposed conditions were transitory or whether they could have changed over time. The court agrees that a portion of the supplement corrected this inadvertent error or omission. However, the court has the same questions regarding reliability that it has with the initial report and will have to make a decision with regard to admissibility at trial. One of the opinions in the supplemental report is a new opinion, however, and will be excluded as untimely. Gingras states that "Mr. Wagoner could not perform his essential duties as a security officer at the time he was hired and through his employment at the hospital even with the training and feedback the hospital provided him at the time." (Gingras Suppl. 12.) The initial report notes difficulties Wagoner would have as a security officer, but it does not state that he could not perform the essential duties of the job. Thus, the court concludes this is a new opinion, not a supplemental one, and it will be excluded, as untimely.

### III. CONCLUSION

For the foregoing reasons, the court will grant Lewis Gale's motion to exclude Foutz's

testimony based on the July 7, 2016 report/letter; will deny Lewis Gale's motion to exclude Foutz's testimony based on her initial report; will grant in part and take under advisement in part Wagoner's motion to exclude Gingras's testimony based on his initial report; and will grant in part and take under advisement in part Wagoner's motion to exclude Gingras's testimony based on his supplemental report. An appropriate order will be entered.

Entered: December 8, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge